NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

COLONIAL KNITTING CORP.,
Respondent.

No. 71–1885.

United States Court of Appeals,
Third Circuit.

Argued May 4, 1972.

Decided July 14, 1972.

As Amended Aug. 4, 1972.

Alan Cirker, NLRB, Washington, D. C., for petitioner.

John M. Power, Foley, Hickey, Gilbert & Power, New York City, for respondent.

Before VAN DUSEN, GIBBONS and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

The National Labor Relations Board (NLRB) has applied for enforcement[1] of its Decision and Order of January 20, 1971,[2] finding respondent, Colonial Knitting Corp. (Colonial), responsible for certain unfair labor practices prior to a Board-supervised consent election. The Board ordered Colonial to cease and desist from such unfair labor practices and directed the issuance of a bargaining order in light of the probable adverse effect of such practices on the election process.

During the period of time relevant to this decision, Colonial operated a plant for the knitting of yarn in Linden, New

1. 29 U.S.C. § 160(e).

2. 187 N.L.R.B. No. 134. The Decision and Order was amended by an Order Correcting Decision and Order issued on September 21, 1971. The amendment affirmed the trial examiner's decision with regard to the production of witnesses' statements requested by respondent.

Jersey.[3] The plant operated on a two-shift basis and employed five men who constituted the work unit at all relevant times. In November of 1969, the International Ladies' Garment Workers' Union, AFL–CIO (Union) began an organizing campaign and by November 25 had received authorization cards from three employees. On December 3, 1969, the Union demanded recognition as the collective bargaining representative of the employees and this demand was refused by Colonial. A consent election was held on January 6, 1970, and the result was four votes against the Union and one in favor. The Union filed objections to conduct affecting the results of the election and these objections were considered in a proceeding consolidated with the unfair labor practice case.

The Board affirmed the findings of the trial examiner that Colonial had violated Section 8(a) (1) of the Act by threatening its employees that wage increases would be withheld and overtime cut back, interrogating employees as to Union sentiment, and granting wage increases before a Board-held representation election. We find that there was substantial evidence on the record as a whole to support these findings.

■ The record clearly establishes that employees Santiago, Froilan Berrios and Luis Berrios received pay raises the day before the election was held. The finding that the grant of these wage increases on the eve of the election was intended to sway employee sentiment from the Union and thus violated Section 8(a) (1) of the Act was supported by substantial evidence.[4]

■ There is also ample support in the record for the Board's finding that employee Santiago was interrogated in violation of Section 8(a) (1). Immediately following the initial demand for recognition by the Union, employee Santiago was asked by the company's vice-president whether he or any other employee had signed Union cards. Santiago was not provided with any assurances against reprisals. In the absence of such assurances, a poll by a high company official is sufficient to support the Board's finding that the polling was coercive in violation of Section 8(a) (1) of the Act.[5]

■ The Board also found that employees Diaz and Froilan Berrios were threatened with the loss of promised wage increases and cuts in overtime, and that these threats violated Section 8(a) (1) of the Act. The record supports the Board's finding that Diaz was threatened by his employer with the loss of these benefits if the Union prevailed; however, our examination of the record indicates that there was not substantial evidence to support the finding that Froilan Berrios was threatened.[6] However, we reject respondent's contention at page 35 of its brief that the case for the Board is not supported by substantial evidence without the affidavits of Froilan Berrios (see, also, p. 952 below at n. 9).

■ The Board also found that Colonial had violated Section 8(a) (5) by refusing to bargain with the Union after three of the five employees in the bargaining unit had designated the Union as their collective bargaining agent.

3. On or about March 1971, Colonial completely terminated operations at the Linden, New Jersey, plant.

4. See N. L. R. B. v. Rexall Chemical Co., 418 F.2d 603, 605 (5th Cir. 1969); Wilmington Heating Service, Inc. v. N. L. R. B., 414 F.2d 278 (3d Cir. 1969).

5. N. L. R. B. v. Historic Smithville Inn, 414 F.2d 1358, 1361–62 (3d Cir. 1969), cert. denied, 397 U.S. 908, 90 S.Ct. 904, 25 L.Ed.2d 88 (1970).

6. Froilan Berrios' testimony at the hearing that he had not been threatened could not be overcome by prior inconsistent statements, particularly where they had been repudiated by a subsequent prior consistent statement of March, 6, 1970. See New Jersey Rules of Evidence 20, 22, 63(1), 2A:84A–1 et seq., New Jersey Statutes Ann. (1967), which are controlling in view of 29 U.S.C. § 160(b), 29 C.F.R. 102.39, and F.R.Civ.P. 43(a).

Colonial challenges this finding on the grounds that employee Santiago had revoked his authorization prior to the making of a demand to bargain upon it. We agree with the Board's finding that Santiago did not evidence his revocation with the clear and unambiguous conduct which is necessary to effect such revocations[7] and affirm the Board's finding of an 8(a)(5) violation.

■ Having found that Colonial committed the above-mentioned unfair labor practices, the Board ordered it to cease and desist from such practices. The Board also set aside the election of January 6, 1970, and issued a bargaining order rather than directing a new election. Colonial, on this appeal, challenges the Board's issuance of the bargaining order.

In NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), the Court authorized the issuance of bargaining orders in those situations where an employer rejects a card majority and commits unfair labor practices that tend to undermine the Union's majority and to make a fair election an unlikely possibility. Where a showing is made that the union at one point had a majority, a lesser showing of employer misconduct is required. 395 U.S. at 614, 89 S.Ct. 1918.

We find that there is ample support in the record for the Board's finding "that the Respondent's unfair labor practices are so pervasive that they have the tendency to undermine majority strength and impede the election process."[8] In reaching this conclusion, the Board did not consider the threats allegedly made to Froilan Berrios.[9] However, the grant of the wage increase and the interrogation of Santiago were sufficiently coercive to meet the standard set out in *Gissel*.

■ We have considered and reject the other contentions made by respondent[10] and, consistent with the foregoing opinion, will grant the National Labor Relations Board's request for enforcement of its January 20, 1971, Decision and Order.

7. In reaching this conclusion, the Board relied in part on the effect of Santiago's vacillating conduct in signing the card, attempting to revoke his authorization, and then reasserting his desire for the Union. *See* Reeder Motor Co., 96 N.L.R.B. 831, 834 (1951).

8. Decision and Order of Jan. 20, 1971, Case 22–CA–4000. The Board went on to state:

"The possibility of erasing the effects of these past practices and insuring a fair election by the use of traditional remedies is slight. We conclude that employee sentiment, once expressed through cards, would, on balance, be better protected by the issuance of a bargaining order."

9. Decision and Order of January 20, 1971, Case 22–CA–4000, note 5 (252A).

10. For example, we reject Colonial's argument that the bargaining order is moot. This contention is based on Colonial's assertion in this court that it is no longer in business. However, no proof of this has been tendered and made part of the record before the Board in this case. If in the future unwarranted acts of compliance with the bargaining order are insisted upon, the rights of the respondent can be protected by the Board, *see* Latin Quarter Cafe, Inc., 182 N.L.R.B. 997 (1970), or by an action for review of a Board contempt proceeding. *See* NLRB v. Southwestern Colorado Contractors Ass'n, 447 F.2d 968 (10th Cir. 1971). *See also* NLRB v. Kostilnik, 405 F.2d 733 (3d Cir. 1969).