GRANDEE BEER DISTRIBUTORS, INC., Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD, Respondent.

No. 1150, Docket 80–4038.

United States Court of Appeals, Second Circuit.

Argued June 23, 1980.

Decided Sept. 30, 1980.

Milton M. Witchel, New York City, for petitioner.

Richard A. Cohen, Atty., N. L. R. B., Washington, D. C. (Vivian A. Miller, Atty., N. L. R. B., Washington, D. C., William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, N. L. R. B., Washington, D. C., on the brief), for respondent.

Before MULLIGAN and MESKILL, Circuit Judges, and HOLDEN,* District Judge.

HOLDEN, District Judge:

The National Labor Relations Board, on February 21, 1980, entered an order (reported at 247 NLRB No. 163) finding that the petitioner, Grandee Beer Distributors, Inc., violated §§ 8(a)(1) and 8(a)(3) of the National Labor Relations Act, 29 U.S.C. §§ 158(a)(1) and 158(a)(3) (1976). The order required the petitioner to cease and desist from its unfair labor practices, and to bargain with Local 1115, Joint Board of Employees Division (hereinafter referred to as the "Union"). The Board's order affirmed the rulings, findings and conclusions of the Administrative Law Judge, but enlarged his recommended order by imposing the bargaining directive. The petitioner seeks review of the Board decision and requests the court to vacate the bargaining order. The Board has filed a cross–application for enforcement. We affirm the Board's findings of violations, but vacate the bargaining order.

## FACTS

The findings of the Administrative Law Judge establish that Grandee Beer Distributors, Inc., is a small family owned corporation, held in equal shares by its four managers, Aaron Rosenberg, Charles Rosenberg, Sam Rosenberg, and Henry Brouton (also spelled "Broutman" in the record). The company operates two outlets in Brooklyn, New York, which sell beer and soda on a wholesale and retail basis. At the time of this dispute the Lexington Avenue store, operated by Aaron and Charles Rosenberg, employed two cashiers and six driver/warehousemen. The Grand Avenue store, operated by Sam Rosenberg and Henry Brouton, employed three cashiers and three driver/warehousemen. The two stores are situated two miles apart and are separately licensed. Each store hires its own employees, has its own small fleet of trucks, and purchases equipment and inventory separately. There is no interchange of personnel between the two stores and no common determination of labor relations policy. Except for a common payroll, the two outlets operate independently.

On May 9, 1978, Charles Diffenbach, an employee at the Lexington Avenue store, procured blank union authorization cards from a Union representative. On May 10, all six driver/warehousemen at the Lexington Avenue store signed authorization cards given to them by Diffenbach.

Diffenbach also asked a Lexington Avenue store employee, Howard Hill, to take some authorization cards to an employee at the Grand Avenue store. Hill did so, and one of the cards fell into the hands of Henry Brouton. Brouton sent this card in an envelope to Aaron Rosenberg at the Lexington Avenue store. Aaron opened

* Of the District of Vermont, sitting by designation.

this envelope in the presence of Hill and Diffenbach. He asked them if they knew anything about the union and both men feigned ignorance. No signed authorization cards were procured from the Grand Avenue employees.

On the morning of May 19, 1978, two representatives of the Union called on Aaron Rosenberg at the Lexington Avenue store. They displayed a folder purporting to contain authorization cards, told Aaron they represented a majority of the Company's employees, and requested recognition. Aaron said he would contact his attorney, but that he had no response at that time. The union representatives departed and later renewed their demand by telegram. The Administrative Law Judge reported:

> The record does not contain the Union's telegram. The only indication of the scope of the unit sought by the Union, other than as reflected in the oral demand, is contained in the unfair labor practice charge, filed on May 30. That charge, listing both locations of the Respondent, alleged a refusal to bargain with the Union "for a unit of warehousemen, truck drivers and helpers excluding office clericals, cashiers, guards and supervisors as defined in the Act. ..." There have been no further contacts between Respondent and the Union, other than through the filing of the unfair labor practice charge, since May 19.

Immediately after the departure of the Union men on May 19, Aaron met with the six warehousemen. He asked them, as a group, whether they wanted a union. Some answered "yes" and the rest were silent. Aaron then asked why the employees wanted a union, and they told him they wanted greater benefits. Aaron then stated that he was working on health and sick leave plans for the employees, and that he intended to increase their wages in June. He also asked Charles Rosenberg, in the presence of the employees, to put two Rosenberg relatives and a third person on the payroll, and to call the Unemployment Compensation office to arrange for new employees. Aaron told the senior warehouseman, Lewis Dyson, that he had the most to lose. He told another employee, Howard Hill, that his duties would be changed, and told a third, Eddie Hood, that he could be required to sweep floors in place of his driving duties.

The action Aaron Rosenberg indicated he would take at the May 19 meeting to effect an increase in wages in June was not accomplished until early July. Hill's privilege of operating a large 10–bay Mack truck was changed. He was never again assigned to drive the company's large truck. The company's practice of lending money to employees, then deducting amounts owed from their paychecks, which existed before the meeting, was continued. The health insurance plan went into effect on November 1, 1978. Unknown to the employees until the May 19 meeting, the plan had been contemplated and had been underway since the fall of 1977.

The Union lodged unfair labor practice charges against Grandee on May 30, 1978. The charges alleged violations of §§ 8(a)(1), 8(a)(3), and 8(a)(5) of the Act.[1] The NLRB

---

1. Sections 8(a)(1), 8(a)(3), and 8(a)(5) provide:
    (a) It shall be an unfair labor practice for an employer—
       (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title:
               *    *    *    *    *    *
       (3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization: *Provided*, That nothing in the subchapter, or in any other statute of the United States, shall preclude an employer from making an agreement with a labor organization (not established, maintained, or assisted by any ac-

tion defined in this subsection as an unfair labor practice) to require as a condition of employment membership therein on or after the thirtieth day following the beginning of such employment or the effective date of such agreement, whichever is the later, (i) if such labor organization is the representative of the employees as provided in section 159(a) of this title, in the appropriate collective–bargaining unit covered by such agreement when made, and (ii) unless following an election held as provided in section 159(e) of this title within one year preceding the effective date of such agreement, the Board shall have certified that at least a majority of the employees eligible to vote in such election

Regional Director issued a complaint on June 30, 1978. Administrative Law Judge Miller heard the case on January 18 and 19, 1979, and issued his decision on May 24, 1979. The Law Judge concluded that the defendant company had violated § 8(a)(1) of the Act in three ways. First, he found the questioning of the employees by Aaron Rosenberg on May 10 and 19 constituted coercive interrogation in violation of the employees' Section 7 rights. Second, he found that Aaron's May 19 statement concerning an increase in wages and the announcement of the health plan constituted an unlawful effort to discourage the employees from joining the union. Since the institution of the medical plan was undertaken prior to the beginning of the union activity, the Administrative Law Judge concluded the implementation of the plan was not violative of the Act. In July the wage increase went into effect. The promise and grant of a wage increase both served to dissuade employees from union membership. Third, he found that the directive from Aaron Rosenberg to Charles Rosenberg to hire new employees constituted a "thinly veiled threat of discharge." The statements to Hood and Hill that their duties would be altered, threatened to change their work conditions and the nature of their employment.

The Administrative Law Judge determined that the denial of Hill's occasional assignment to drive the Schaefer Mack truck constituted conduct that violated § 8(a)(3) of the Act.

The hearing judge rejected the Union's claim that the petitioner refused to bargain in violation of § 8(a)(5) on the ground that the Union did not have a majority of the signature cards for the requested unit. The Union's demand for recognition included all the employees at both stores, a total of 14. The Union held only six authorization cards from driver/warehousemen employed at the Lexington Avenue location; thus it fell short of majority status in the unit demanded. Furthermore, the hearing officer determined that a single store unit consisting of all the cashiers and driver/warehousemen at the Lexington Avenue store was the appropriate unit. These two factors caused him to conclude that no proper demand for bargaining had been made, and that the company had not violated § 8(a)(5) of the Act.[2]

To remedy the violations of §§ 8(a)(1) and 8(a)(3), Judge Miller recommended a cease and desist order and a posting of the usual Notice to Employees. He expressly held that a bargaining order was unnecessary under the authority of *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969). He characterized the violative incidents as "few and isolated," with little likelihood of recurrence. Conse-

---

have voted to rescind the authority of such labor organization to make such an agreement: *Provided further,* That no employer shall justify any discrimination against an employee for nonmembership in a labor organization (A) if he has reasonable grounds for believing that such membership was not available to the employee on the same terms and conditions generally applicable to other members, or (B) if he has reasonable grounds for believing that membership was denied or terminated for reasons other than the failure of the employee to tender the periodic dues and the initiation fees uniformly required as a condition of acquiring or retaining membership.

    \*    \*    \*    \*    \*    \*

(5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

2. The Administrative Law Judge explained:

General Counsel's principal contention is that Respondent [Grandee], upon receipt of the Union's demand for recognition systematically polled the unit employees and, having done so and determined that a majority of them desired union representation, was bound by the results of that poll. This contention must fail for two reasons. First, the Union sought a unit consisting of the employees of both stores. The alleged poll did not establish that a majority of the employees properly included within that unit desired to be represented by the Union. Second, the Union's requested unit was inappropriate for the purposes of collective bargaining and the variation from what would be appropriate was substantial. Therefore, Respondent was relieved of its obligation to bargain.

Appendix, Exhibit C at 11–12 (citations omitted).

quently, the violations would not tend to undermine the Union's majority strength or impede an election. Traditional remedies could reasonably be expected to erase the effects of past practices and ensure a fair election.

The Union and the General Counsel for the NLRB filed exceptions to the Administrative Law Judge's failure to recommend a bargaining order. The company excepted to his findings of unfair labor practices.

The Board delegated its authority in the proceeding to a three–member panel under Section 3(b) of the Act. The panel issued an order on February 21, 1980, affirming the findings and conclusions of the Administrative Law Judge with respect to the commission of unfair labor practices. It reversed the Administrative Law Judge's findings and conclusions that a bargaining order was not appropriate. Accordingly, the Board issued a bargaining order, declaring the Union to be the representative of all the employees at the Lexington Avenue store as of May 19, 1980. In so doing the panel agreed with the Administrative Law Judge's finding that there was no violation of Section 8(a)(5) of the Act for the reason that the Union had never made a proper demand for bargaining in an appropriate unit. However, the Board held that such a demand was not necessary to the granting of a bargaining order as a remedy for an employer's serious unfair labor practices in violation of other provisions of the Act. The panel disagreed with the characterization that the unfair practices were "few and isolated," and, as such, did not warrant a bargaining order.

## DISCUSSION

1. *Findings of Violations of §§ 8(a)(1) and 8(a)(3)*

█ The NLRB's adoption of the Administrative Law Judge's findings of fact can only be overturned on review if those findings are not supported by substantial evidence on the record considered as a whole. Labor–Management Relations Act, 1947, 29 U.S.C. §§ 160(e) and (f) (1976); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71

S.Ct. 456, 95 L.Ed. 456 (1951). Applying this standard, we accept the Board's adoption of the conclusions of the Administrative Law Judge that §§ 8(a)(1) and 8(a)(3) were violated by Grandee.

The Administrative Law Judge's finding of coercion in the interrogation of the employees on May 10 and May 19 satisfies three of the five factors of *Bourne v. NLRB*, 332 F.2d 47 (2d Cir. 1964). See *NLRB v. Rubin*, 424 F.2d 748, 751 (2d Cir. 1970); *Retired Persons Pharmacy v. NLRB*, 519 F.2d 486, 492 (2d Cir. 1975). Substantial evidence indicates that Aaron Rosenberg was the highest ranking officer in the company, that employees Hill and Diffenbach supplied untruthful answers to the May 10 questioning, and that an atmosphere of hostility prevailed during the interrogation. Furthermore, the interrogation here can be regarded as being more coercive than the questioning proscribed in *NLRB v. Solboro Knitting Mills, Inc.*, 572 F.2d 936, 939–40 (2d Cir. 1978), *cert. den.* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). In *Solboro* the group questioning consisted of one inquiry as to whether the employees wanted the union, which was greeted by silence. By contrast, the questioning on May 19 involved an inquiry into pro–union sentiment and inquiry into the reasons for that sentiment. We find that the Administrative Law Judge's finding of coercion is supported by the evidence.

The promises and grant of a benefit (the wage and health plan offers) were not expressly made dependent upon the employees' rejection of the Union. Nevertheless, the timing of those offers indicated a coercive purpose and effect. See, e. g., *NLRB v. Colonial Knitting Corp.*, 464 F.2d 949 (3d Cir. 1972) (granting of wage increases on eve of certification election was coercive). The company failed, in the hearings before Judge Miller, to justify the timing of the offer of benefits, as it was called upon to do to avoid the inference of anti–union action. See *NLRB v. Styletek*, 520 F.2d 275 (1st Cir. 1975). The evidence in the record supports Judge Miller's conclusion that these offers were made by Aaron Rosenberg on May 19.

Timing is also the key ingredient in the threats to hire new employees and to change the job assignments of Hill and Hood. Given the circumstances, the employees could reasonably infer that these threats were directed towards their decision to join the Union. *See NLRB v. Kaiser Agricultural Chemicals*, 473 F.2d 374, 381 (5th Cir. 1973). Furthermore, the removal of employee Hill from the driving assignment on the large truck at the time of the Union confrontation violated § 8(a)(3). The timing and circumstances of the reassignment support Judge Miller's finding that the action was retribution for Union activities.

In sum, substantial evidence in the record taken as a whole supports the Board's conclusion of §§ 8(a)(1) and 8(a)(3) violations. Next, we consider the Board's reversal of Judge Miller's refusal to recommend a bargaining order.

## 2. The Bargaining Order

In determining the validity of the bargaining order, the court is required to test the Board's action by the substantial evidence standard. In so doing, the court is called upon to consider the hearing officer's opinion, which is a vital part of the record. *Universal Camera Corp. v. NLRB, supra*, 340 U.S. at 493, 71 S.Ct. at 467.

The Board affirmed the decision of the Administrative Law Judge in treating the case as one in which no demand for bargaining had been made. The Administrative Law Judge carefully considered (as to the bargaining order) whether the unfair labor practices which he had previously found would impede an election to such an extent that the possibility of erasing their past effects and ensuring a fair election by the use of traditional remedies was slight.

The Administrative Law Judge characterized the violative incidents as "few and isolated." He also found that the company did not conduct an extensive anti–union campaign. In particular, he found that all the incidents were confined to May 19, with the exception of the promised pay increase which occurred in early July and the brief

questioning on May 10. Judge Miller concluded that there was little likelihood of recurrence of the unfair practices, and that there was a reasonable expectancy of erasing the effect of the violations and of holding a fair election. He concluded, and the record bears him out, that the impact of the violations on the election process was minimal. *Id.* Under the holding of *NLRB v. Gissel Packing Co.*, 395 U.S. 575, 615, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547 (1969), the Administrative Law Judge's findings would not warrant the issuance of a bargaining order.

The three member panel of the Board overruled Judge Miller's findings on the bargaining order. The panel characterized the violations as serious unfair labor practices. The Board held that the coercive interrogation and promise of benefits on May 19, standing alone, were serious violations. It further found that the 8(a)(3) violation in the reassignment of Hill occurred May 10. However, the record establishes, as found by the Administrative Law Judge, that the reassignment was not made until May 19. The panel also erred in its finding that the Union representatives demanded recognition and the employer heard and rejected the demand. Our search of the record fails to uncover any evidence to support the Board's conclusion that the petitioner rejected the Union's demand.

The Board went on to conclude that the May 10 violations, coupled with the wage increase in early July, created a continuing course of employer misconduct. From this, the Board reasoned that the misconduct had a "tendency to undermine majority strength and impede the election processes" and that "the possibility of erasing the effects of past practices and of ensuring a fair election ... by the use of traditional remedies, though present, is slight." *Citing NLRB v. Gissel Packing Co.*, 395 U.S. 575, 614, 89 S.Ct. 1918, 1940, 23 L.Ed.2d 547 (1969).

The Board's issuance of a bargaining order was not based upon a violation of § 8(a)(5) of the Act since the Board af-

firmed the Administrative Law Judge's findings in this respect. The Board correctly stated that a *Gissel* bargaining order may be appropriate in absence of a refusal to bargain, given a sufficient impairment of a preexisting card majority. *NLRB v. Solboro Knitting Mills, Inc.*, 572 F.2d 936 (2d Cir. 1978), *cert. den.* 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978). However, the Board's finding that the employer's actions removed all but a slight possibility of a fair election is not supported by substantial evidence on the totality of the record.

■ A bargaining order is an extraordinary remedy which should only be applied in unusual cases. "[I]n the great majority of cases, a cease and desist order with the posting of appropriate notices will eliminate any undue influences upon employees voting in anonymity." *NLRB v. Gissel Packing Co., supra*, 395 U.S. at 612 n. 32, 89 S.Ct. at 1939 (1969) (quoting *NLRB v. Logan Packing Co.*, 386 F.2d at 570).

■ In testing the validity of the order, the relevant factors to be considered are the effects of the employer's misconduct and the likelihood of recurrence. *NLRB v. Pilgrim Foods, Inc.*, 591 F.2d 110 (1st Cir. 1978) (explaining *Gissel*); *First Lakewood Associates v. NLRB*, 582 F.2d 416 (7th Cir. 1978). The Administrative Law Judge carefully searched these questions in the light of appropriate consideration of credibility of the witnesses who appeared before him. He resolved them in favor of the traditional and preferred method of the election process. The panel's factual determination to the contrary is not supported by substantial evidence.

In the record presented, there is no affirmative indication that the Board inquired into either of these questions. As to inhibitory effects, the Board focused only on the violations and their severity. It went on to infer from these findings that the effect of the violations was indelible. This resolution of the question contradicts the record. The Board should have considered testimony of the employees themselves as indicative of their degree of intimidation. The Administrative Law Judge certainly did so when he reached his conclusions as to the improprie-

ty of a bargaining order. He had full opportunity to observe the employees when they testified before him. The Administrative Law Judge made no finding that the employees would be intimidated or inhibited in the event of an election. The record read as a whole does not justify such a finding.

On the question of recurrence, the Board's decision is silent. The Administrative Law Judge perceived little likelihood of recurrence. He characterized the violations as "an impulsive and unsophisticated response to the surprise of receiving a demand for recognition." Indeed, the record indicates that the employer's actions were spontaneous and unplanned, without a showing of a wrongful intention on the part of the employer to engage in such activities in the future.

In sum, the record reveals neither a lingering inhibitory effect, nor a likelihood of recurrence; as such, it does not warrant the extraordinary remedy of a bargaining order. For the reasons stated, the court will vacate and deny enforcement of the bargaining order and grant enforcement of the order to cease and desist. *See, e. g., NLRB v. Pilgrim Foods, Inc., supra*, 591 F.2d at 120; *First Lakewood Associates v. NLRB, supra*, 582 F.2d at 424.