## NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

## APPLE TREE CHEVROLET, INC., Respondent.

### No. 81–1277.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 6, 1981.

Decided March 3, 1982.

---

Sara McLaurin Green, Washington, D.C. (William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, John G. Elligers, Washington, D.C., on brief), for petitioner.

Asa Ambrister, Washington, D.C. (George V. Gardner, Gardner, Ambrister & Smith, Washington, D.C., on brief), for respondent.

Before RUSSELL, ERVIN and CHAPMAN, Circuit Judges.

DONALD RUSSELL, Circuit Judge:

The National Labor Relations Board has a second time petitioned this court for enforcement of its bargaining order against Apple Tree Chevrolet, Inc. Following the first hearing of this case, we remanded the case to the Board for reconsideration of its bargaining order in light of the final results of a representation election held in February 1977.[1] While the Board has concluded that a bargaining order remains appropriate,[2] we disagree, and accordingly deny enforcement of the Board's order.

The facts relevant to this appeal are fully set forth in our previous opinion. In short, efforts to organize the respondent's non-sales employees began in early January 1977. During the ensuing organizational campaign, the employer engaged in a number of actions later found by the Board to constitute violations of 8(a)(1) of the National Labor Relations Act, 29 U.S.C. §§ 151–69, including the solicitation of employee grievances, the announcement of benefits, and coercive interrogation. The Board also decided that four employees had been discriminatorily discharged in violation of 8(a)(3). Although we affirmed the Board's findings as to the 8(a)(1) violations,

1. Our first decision in this case, decided November 1, 1979, is reported at 608 F.2d 988.

2. The Board's Supplemental Decision and Order, dated August 27, 1980, is reported at 251 NLRB 666.

we concluded that there was insufficient evidence to support findings of 8(a)(3) violations.

The representation election was held on February 25, 1977. The initial vote tally showed a Union[3] victory by a twenty-three to seventeen margin, with seventeen votes challenged and uncounted. After overruling eleven of the challenges, and prior to our decision upholding the four employee discharges in question, the Board conducted a final tally, which resulted in a twenty-seven to twenty-four Union victory. On remand, however, because of the commingling of ballots, the Board was unable to identify the votes of the four employees determined by us to have been legitimately discharged. Thus, because the four dischargees were ineligible to vote, and because the three-vote difference in the final tally indicated that their votes might have affected the outcome of the election, the Board was forced to disregard the election results. Now, instead of calling for a new election, the Board seeks enforcement of its bargaining order.

■ The proper starting point in an analysis of this case and the many cases like it is an awareness that our nation's labor policies have never included a preference for imposing a collective bargaining representative upon those who have not affirmatively chosen that representative by election.[4] As we stated in our initial decision in this case, "an election, not a bargaining order, remains the traditional, as well as the preferred, method for determining the bargaining agent for employees." 608 F.2d 988, 996 (4th Cir. 1979). See J.J. Newberry

Co. v. NLRB, 645 F.2d 148, 153–54 (2d Cir. 1981). Although the Board in its brief has correctly identified the standard laid down by the Supreme Court in NLRB v. Gissel Packing Co., 395 U.S. 575, 89 S.Ct. 1918, 23 L.Ed.2d 547 (1969), according to which the propriety of a bargaining order is to be measured, the Board has misconstrued the breadth of its discretion.

■ In Gissel, the Court allowed that a bargaining order should issue "[i]f the Board finds that the possibility of erasing the effects of past [unfair labor] practices and of ensuring a fair election (or a fair rerun) by the use of traditional remedies, though present, is slight and that employee sentiment once expressed through cards would, on balance, be better protected by a bargaining order." 395 U.S. at 614–15, 89 S.Ct. at 1940–41. Nonetheless, to avoid the appointment of bargaining agents not desired by employees and to encourage reliance upon elections as the preferred method for determining bargaining agents, we emphasize once again that a bargaining order is appropriate only when the Board's findings and analysis under the Gissel standard are "specific" and "detailed." See 608 F.2d at 997. See, e.g., NLRB v. Rexair, Inc., 646 F.2d 249, 251 (6th Cir. 1981); Red Oaks Nursing Home, Inc. v. NLRB, 633 F.2d 503, 508–10 (7th Cir. 1980); NLRB v. Jamaica Towing, Inc., 602 F.2d 1100, 1104–05 (2d Cir. 1979); NLRB v. Armcor Industries, Inc., 535 F.2d 239, 244–45 (3d Cir. 1976). The Board's discretion to issue a Gissel order is accordingly limited by the requirement that there be "a sufficient factual basis." 608 F.2d at 992. See NLRB v.

---

**3.** The Union involved is Sheet Metal Workers International Association, Local No. 66, AFL–CIO.

**4.** See NLRB v. K & K Gourmet Meats, Inc., 640 F.2d 460 (3d Cir. 1981).

Legislation and experience indicate that an employee's statutory right to select an exclusive bargaining agent should be determined by democratic process in a free and open election. The Board's responsibility for holding such elections was not meant to be supplanted by the authority found to exist in Gissel [see text, infra]. Only in exceptional circumstances, where it is obvious that the

extensive machinery and power of the NLRB is [sic] inadequate to ensure a free election, should employees be denied their right to cast a secret ballot for or against an exclusive bargaining agent .... The bargaining order is an extraordinary remedy and, because it operates to disenfranchise the workers in the choice of their representative, it is appropriate only when the harmful effects of that disenfranchisement are outweighed by the positive advancement of the policies underlying federal labor law.

Id. at 469–70 (footnote omitted).

*Yeshiva University*, 444 U.S. 672, 691, 100 S.Ct. 856, 867, 63 L.Ed.2d 115 (1980).

Acknowledging that authorization cards indicated that the Union once commanded the sentiment of a majority of the employees, we remanded this case to permit the Board a second opportunity to make findings sufficient to establish the dissipation of that majority, the continuing effects of the employer's misconduct, and the ineffectiveness of the usual remedies. The Board has failed to make such findings. Implicit in our earlier opinion was the need for the Board to gather additional testimonial or documentary evidence to substantiate what were and continue to be only conclusory statements clothed with little more than transparent factual generalities. Instead of taking more evidence, however, the Board in its Supplemental Decision and Order and in its most recent briefs has simply reworded the reasoning on which it depended in its earlier appeal herein.

We reiterate that we do not dispute the Board's determination that the employer was guilty of 8(a)(1) violations, but at the same time we stress again that 8(a)(1) violations alone are not enough to support a *Gissel* order. *See Red Oaks Nursing Home, Inc. v. NLRB*, 633 F.2d 503, 510 (7th Cir. 1980). The continuing impact of those violations is the important matter. 608 F.2d at 999. The evidentiary record on this appeal is no different than the record presented to us previously. Consequently, we have

no more reason now than before to find the solicitation of grievances, the announcement of benefits, or the interrogation of employees so coercive in long-term impact as to render the likelihood of a fair rerun election nonexistent or even highly improbable. Furthermore, we have no indication that the employer's misconduct will recur or that the Board's ordinary remedies of a cease and desist order and a posted notice will not suffice to ensure that any future election is untainted by the effects of previous 8(a)(1) violations.[5]

Finally, we noted in our prior decision that the "really significant fact" in each of the cases reviewed in *Gissel* was the dissipation of a previous union majority. 608 F.2d at 1000. In this case, whether the Union majority[6] has been dissipated is purely speculative. The Board hypothesizes that the four ineligible voters probably voted in favor of the Union, and therefore, that the Union actually lost the election by one vote. On that basis, the Board argues that the Union majority had been dissipated. We recognize that the Board was required finally to disregard the results of the February 1977 representation election. We refuse, however, to join the Board in its speculation.

Our reluctance to speculate about the dissipation of a Union majority in this case is further justified by the high employee turnover rate in the employer's business.[7] Ac-

---

5. In this case, contrary to our conclusion in the recent case of *J.P. Stevens & Co., Inc. v. NLRB*, 668 F.2d 767 at 773 (4th Cir. 1982), there is little, if any, evidence that "[c]onventional Board remedies would be ineffectual in restoring the *status quo ante* with respect to [certain organizational campaign] issues or in assuring that a rerun election could be held devoid of their lingering effects." Moreover, there is no reason in the instant case to believe that the employer is likely to ignore Board remedies less stringent than a bargaining order. *Cf. id.* at 11–12 (past history and recent conduct of employer clearly indicate futility of rerun election). Here, as in *Grandee Beer Distributors, Inc. v. NLRB*, 630 F.2d 928, 934 (2d Cir. 1980), with respect to the employer's misconduct, "the record reveals neither a lingering inhibitory effect, nor a likelihood of recurrence; as such, it does not warrant the extraordinary remedy of a bargaining order."

6. Authorization cards signed by more than thirty employees evidenced a Union majority in January, 1977.

7. In a case where some 63% of the employees who had voted in a representation election were no longer working for the employer, the Second Circuit stated:

   The effect of a bargaining order could thus easily be to impose upon the employees a union not desired by the great majority of them. Where, as here, there is no indication that the employer in any way deliberately created delay in order to profit from it and, since the unfair labor practice involved was not egregious in the first place, the risk of this unwanted imposition is unwarranted. *J.J. Newberry Co. v. NLRB*, 645 F.2d 148, 154 (2nd Cir. 1981). *See Red Oaks Nursing Home, Inc. v. NLRB*, 633 F.2d 503, 510 (7th Cir. 1980);

cording to the employer's affidavit, approximately 75% of the employees constituting the bargaining unit as of January 20, 1977, the starting date for the Board's bargaining order, had left the employ of Apple Tree Chevrolet by August 27, 1980, the date of the Board's Supplemental Decision and Order. We are cognizant of the need to avoid encouraging employers to engage in dilatory tactics in hopes that changes in the composition of a bargaining unit ultimately will defeat employee efforts to organize. Nevertheless, the high employee turnover rate in this case is just one more factor, in addition to those discussed above, that militates against the substitution of a *Gissel* bargaining order for the more desirable means of ascertaining employee preferences embodied in a representation election.

For the reasons stated, the petition of the Board for enforcement of its bargaining order is denied.

ENFORCEMENT DENIED.

*NLRB v. Jamaica Towing, Inc.*, 632 F.2d 208,   214–16 (2d Cir. 1980).