833 F.2d 310
 126 L.R.R.M. (BNA) 3032, 133 L.R.R.M. (BNA) 2344
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
KOONS FORD OF ANNAPOLIS, INC., Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent
District 65, United Automobile, Aerospace and Agricultural
Implement Workers of America, AFL-CIO, the Center
on National Labor Policy, Intervenor
Amicus Curiae.
 No. 87-3801.
 United States Court of Appeals, Fourth Circuit.
 Argued June 3, 1987.
Decided Oct. 28, 1987.
 
 Robert Elton Campbell (Christopher Capuano, Donovan, Leisure, Newton & Irvine on brief) for petitioner.
 Michael Ernest Avakian (Terran W. Mast, Center on National Labor Policy, Inc. on brief) for Amicus Curiae Center on National Labor Policy, Inc., Karen R. Cordry, National Labor Relations Board (Rosemary M. Collyer, General Counsel, John E. Higgins, Deputy General Counsel, Robert E. Allen, Associate General Counsel, Elliott Moore, Deputy Associate General Counsel, W. Christian Schumann, Supervisory Attorney, Sandra S. Elligers, John H. Ferguson, Marion L. Griffin Victoria A. Higman, Joseph A. Oertel on brief) for Respondent.
 (Ellen F. Moss on brief) for District 65, United Automobile, Aerospace and Agricultural Implement Workers of America, AFL-CIO.
 Before HARRISON L. WINTER, Chief Judge, and DONALD RUSSELL and WIDENER, Circuit Judges.
 PER CURIAM:
 
 
 1
 This case concerns an order of the National Labor Relations Board (Board) directing Koons Ford of Annapolis, Inc. (Koons Ford) to recognize and bargain with District 65, United Automobile, Aerospace and Agricultural Implement Workers of America (Union) as the collective bargaining agent for all service department employees. We grant enforcement.
 
 I.
 
 2
 The Union began organizing the service department employees at Koons Ford in September 1982. By November 24, 1982, a majority of the employees (32 out of 62) had signed "single purpose" authorization cards by which they accepted membership in the Union and authorized it to bargain on their behalf. Additional employees signed authorization cards in the following weeks. When the election was held on January 12, 1983, however, only 27 of the 66 eligible employees voted to be represented by the Union. The Union filed objections to the election and also filed unfair labor practices charges.
 
 
 3
 Following consolidation of the election objections and unfair labor practices charges, an administrative law judge (ALJ) held a hearing from June 6, 1983, to October 18, 1983. On May 30, 1984, the ALJ issued his opinion, concluding that Koons Ford had violated sections 8(a)(1), 8(a)(3), and 8(a)(5) of the National Labor Relations Act (NLRA), 29 U.S.C. Sec. 151 et seq., by engaging in the following prohibited conduct: (1) Six days before the representation election Koons Ford discriminatorily granted wage increases and bonuses to its employees to discourage support for the Union. (2) Six days before the representation election Koons Ford settled a long-standing employee grievance about the computation of wage rates to discourage support for the Union. (3) Between November 1982 and January 1983 Koons Ford, through its chief manager John Koons, Jr., and three other managers, threatened employees with plant closure, loss of employment, and other reprisals if they chose the Union as their bargaining agent. (4) During this same time period these Koons Ford managers coercively interrogated employees regarding their union activity and the activities of others, and solicited employees to engage in anti-Union activity. In total, the ALJ found approximately 26 instances of unlawful conduct by John Koons, Jr., and the three other managers.
 
 
 4
 The ALJ issued a cease-and-desist order and set aside the election. He then considered the propriety of issuing a bargaining order pursuant to NLRB v. Gissel Packing Co., 395 U.S. 575 (1969). The ALJ determined that Koons Ford's violations had been severe and that they were the kind of violations that would not quickly dissipate. He then concluded that there was little likelihood of a free and fair second election, and that the employees' sentiment was best expressed through the authorization cards. He therefore ordered Koons Ford to recognize and bargain with the Union.
 
 
 5
 Koons Ford excepted to the ALJ's decision and filed three separate motions to reopen the record for receipt of supplemental evidence regarding turnover in Koons Ford's ownership, management, and employees that had occurred after the hearings. On December 24, 1986, the Board denied the motions to reopen and affirmed the ALJ's order with slight modifications in the findings of fact. Koons Ford then petitioned for review, and the Board petitioned for enforcement.
 
 II.
 
 6
 Koons Ford alleges that the Board must consider the appropriateness of a bargaining order at the time it is issued, and that the Board thus had an obligation to reopen the record to receive evidence of large-scale employee turnover, a change in ownership, and the departure of offending managers. All of these changes occurred after the hearing, and most of them occurred after the ALJ filed his decision.
 
 
 7
 As support for its proposition, Koons Ford quotes from this court's opinion in General Steel Products, Inc. v. NLRB, 445 F.2d 1356 n. 8 (4th Cir.1971) (General Steel II ), in which the court refused to enforce a bargaining order when the Board had failed to consider substantial changes in ownership and management, as well as high employee turnover.
 
 
 8
 More than employee turnover is involved here. There was a proffer to prove a complete change in ownership and management with a resultant departure by resignation, discharge or demotion, of the perpetrators of the unfair practices. The change, whether effected before or after the unfair labor practice hearing, materially altered the situation and should be considered by the Board on remand, in light of the principles stated in Gissel....
 
 
 9
 See also NLRB v. Apple Tree Chevrolet, Inc., 671 F.2d 838 (4th Cir.1982) (Apple Tree II ) (refusing to enforce bargaining order after Board failed to hold hearing to consider changes in management as well as high employee turnover).
 
 
 10
 The Board contends that under the principle of finality, it was not required to reopen the record to consider post-hearing evidence of changed circumstances. The Board further argues that it actually did consider this evidence: the Board's opinion explicitly states that the evidence sought to be adduced by Koons Ford would not require a different result. A review of the Board's opinion shows that it explained why the high employee turnover would not change its decision, but it did not expressly address the turnover in ownership or management.[1]
 
 
 11
 Without resolving this issue, we note that a bargaining order is in the nature of an equitable remedy. Once the ALJ has issued a bargaining order, the employer who seeks to reverse that order must have clean hands. If the employer continues to act with disdain or disregard for this country's labor laws, he presents the most cogent possible evidence that there could not be a free and fair second election, and that a bargaining order would best reflect the employees' sentiment. Only if the employer has clean hands can there be any reason to look at changed circumstances and determine whether they should affect the enforcement of the bargaining order.
 
 
 12
 During argument in this Court, it was brought to our attention that unfair labor practices charges had been filed against Koons Ford after the Board issued its order in this proceeding. These charges were disposed of by a settlement stipulation providing for the entry of a Board Order and a Court Judgment enforcing that order. In the settlement stipulation Koons Ford did not admit violating the Act but it consented to an extensive order requiring compliance with the Act and providing for full and immediate reinstatement, and for any loss of earnings or other benefits suffered by reason of the discharging of three specific complainants in the proceeding. That settlement stipulation came up on the petition for enforcement by the Board to us, and we have ordered enforcement. We, therefore, have before us as a part of the records of this Court the records of that proceeding. It is established that we may refer to records of our own court in litigation between the same parties in reviewing another appeal between those parties where the other record is relevant to the pending proceedings. Jacques v. United States R.R. Retirement Bd., 736 F.2d 34, 40 (2d Cir.1984); Harrington v. Vandalia-Butler Bd. of Ed., 649 F.2d 434, 441 (6th Cir.1981); Gomez v. Wilson, 477 F.2d 411, 416; cf., Wilson v. Volkswagen of America, Inc., 561 F.2d 494, 510, n. 38 (4th Cir.1977). Applying that rule, we have reviewed in this appeal the record in the other proceeding between the parties. It is obvious that Koons Ford cannot meet the "clean hands" requirement as a condition for objecting to the bargaining order in this case. It would be, therefore, a waste of judicial time to remand this cause to the Board to consider the "clean hands" issue.
 
 
 13
 Enforcement of the Board's bargaining order is accordingly ordered.
 
 
 14
 ENFORCEMENT ORDERED.
 
 
 
 [1]
 The alleged changes in ownership and management involve unresolved questions of fact. The new sole owner of Koons Ford is Joseph Koons, a brother of former chief manager John Koons, Jr. Because Joseph Koons and John Koons, Jr., had both been part owners of Koons Ford (through a four-member family partnership) at the time of the unfair labor practices, there is a question as to whether there was really a change in ownership for purposes of a Gissel bargaining order. Similarly, there is a question concerning the change from John Koons, Jr., to Joseph Koons as the chief manager. Finally, questions remain about the other three managers who committed unfair labor practices. One of these managers (Tomarchio) was terminated before the election. Another of the managers (Hendrick) may not have committed any hallmark violations. And the third manager (Sherbert) may be at too low a level to poison the atmosphere and render a fair second election unlikely