**UNITED STATES of America, Appellant,**

v.

**Fred FERNANDEZ, Appellee.**

**No. 160, Docket 74–1164.**

United States Court of Appeals, Second Circuit.

Argued Sept. 13, 1974.

Decided Nov. 6, 1974.

---

Thomas R. Pattison, Asst. U. S. Atty. (David G. Trager, U. S. Atty., E. D. N. Y., L. Kevin Sheridan, Asst. U. S. Atty., of counsel), for appellant.

Eleanor Jackson Piel, New York City, for appellee.

Before KAUFMAN, Chief Judge, and SMITH and TIMBERS, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This appeal marks our third encounter with the prosecution of Fred Fernandez. On February 25, 1971, Fernandez was indicted for his alleged participation in the Christmas Eve, 1970 holdup of the First Federal Savings and Loan Association on Kissena Boulevard in Queens. Since that time the government has made four unsuccessful attempts to convict him, and now it asks us to give it another chance. The first trial resulted in a hung jury; in the second and third trials, judgments of conviction were obtained, both of which were reversed on appeals to this court.[1] The fourth attempt never reached trial. The United States District Court for the Eastern District of New York, Jack B. Weinstein, *Judge,* dismissed the indictment because of the government's refusal to disclose the names of two "informants" who had from bank photographs identified a person other than Fernandez as one of the bank robbers. The government's appeal from this order is now be-

---

[1] In United States v. Fernandez, 456 F.2d 638 (2d Cir. 1972) (*Fernandez I*) we reversed because testimony was introduced regarding the identification of Fernandez from an impermissibly suggestive photographic display. In United States v. Fernandez, 480 F.2d 726 (2d Cir. 1973) (*Fernandez II*) we reversed on account of excessive and improper questioning of witnesses by the trial judge.

fore us.[2] We reverse and remand with directions.

## I.

The very question presented by this appeal was before us in *Fernandez II*. We saw the issue as one of " 'balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.' Roviaro v. United States, 353 U.S. 53, 62, 77 S. Ct. 623, 628, 1 L.Ed.2d 639 (1957)." On the "public interest" side of the scale was the government's assertion that the informants would be placed in serious danger were their identities disclosed.[3] On the "right to prepare a defense" side was the fact that Fernandez was able to question FBI agent Sweeney, and thereby accomplish substantially the same thing that questioning the informants themselves could have accomplished. We held that this balance tipped decidedly toward nondisclosure, and specifically noted that this ruling was to apply at the anticipated fourth trial. 480 F.2d at 738–739.

That trial did not occur. The district court, upon learning certain facts not before this court on the prior appeals, ruled that disclosure was necessary, and dismissed the indictment when the government refused to comply. The new evidence consisted of the identities of the informants[4] and an admission by the government that the informants had agreed to talk only upon receiving assurances that they would not be called upon to testify. The district court stated that the individuals were "public officials" and "not the normal type informants," found the claim of danger to be "absolutely incredible" and "farfetched," and concluded that the reason for the government's refusal to disclose was not the possibility of danger, but the "private agreement" with the informants. In addition, the court found that the identities of the informants constituted *Brady*[5] material because the informants would be "two reputable witnesses" whose exculpatory testimony might well "be very persuasive with the jury." Indeed, the court went so far as to say, "If I were defense counsel I couldn't try the case without having this material." Thus, on the basis of new evidence, the district court held the government's assertion of danger to be groundless, and it found that there would be benefit to the defense from having the informants testify personally, as opposed to having an FBI agent testify about their mis-identification.

The issue presented to us, therefore, is whether a district court, on remand after appeal, may change the law of the case as established by this court on the basis of new evidence. We are constrained to hold that it may not unless, of course, authorized to do so by the terms of the remand. The rule has been stated as follows:

> Where a case has been decided by an appellate court and remanded, the court to which it is remanded must proceed in accordance with the mandate and such law of the case as was established by the appellate court.

1B J. Moore, Federal Practice, ¶ 0.-404[10] at 571 (2d ed. 1974) (footnotes omitted). In Munro v. Post, 102 F.2d 686, 688 (2d Cir. 1939), this court characterized the doctrine of law of the case as imposing a "duty" on a district court to follow a ruling made by this court at an earlier stage of a case. The Supreme Court has likewise indicated that compliance with an appellate court's prior rul-

---

2. We have jurisdiction pursuant to 18 U.S.C. § 3731.

3. Obviously, the danger could not have come from Fernandez, since the informants' testimony would have been exculpatory. Rather, the government pinpointed as the source of the danger two individuals alleged to have participated in the robbery with Fernandez, whom the informants had correctly identified, and who had been convicted.

4. This information was in the form of a sealed exhibit not made available to the defense.

5. Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

ings in a case is a matter of a trial court's duty, not its discretion. In re Sanford Fork & Tool Co., 160 U.S. 247, 255, 16 S.Ct. 291, 40 L.Ed. 414 (1895); Ex parte Sibbald v. United States, 12 Pet. 488, 492, 9 L.Ed. 1167 (1838). And in Banco Nacional de Cuba v. Farr, 383 F.2d 166, 177 (2d Cir. 1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1038, 20 L. Ed.2d 1151 (1968), we noted that the law of the case (as embodied in the Supreme Court mandate rule) "prevents the lower court from considering newly discovered evidence." We must therefore reverse the order of the district court and remand for further proceedings.

## II.

▉ That does not finally dispose of the issues, however. An issue decided on a prior appeal is not foreclosed with all the finality of *res judicata* when the case comes back to this court. Although the district court may not change our mind for us, we may ourselves do so.

[T]he federal doctrine of law of the case merely expresses the practice of federal courts generally to refuse to reopen what has been decided, not a limit to their power. The doctrine embodies a salutary rule of practice that when a federal appellate court has established a rule of law for the case at bar it will not, on a successive appeal, depart therefrom in deciding the same issues, except for cogent reasons. In brief, the doctrine does not rigidly bind the appellate court, but is addressed to its good sense, and the court will depart from its prior legal pronouncements when the circumstances of the case warrant.

1B J. Moore, Federal Practice, *supra,* ¶ 0.404[10] at 573–74 (footnotes omitted).

This has long been the Supreme Court's view on the subject,[6] and it finds ample support in our cases as well. Johnson v. Cadillac Motor Car Co., 261 F. 878 (2d Cir. 1919).[7] *Johnson's* interpretation of the law of the case doctrine was reaffirmed in Perrone v. Pennsylvania R.R., 143 F.2d 168, 169 (2d Cir. 1944). *See also,* Petition of Kinsman Transit Co., 388 F.2d 821, 825 n. 9 (2d Cir. 1968).[8]

6. Southern Ry. v. Clift, 260 U.S. 316, 319, 43 S.Ct. 126, 67 L.Ed. 283 (1922); Messenger v. Anderson, 225 U.S. 436, 444, 32 S.Ct. 739, 56 L.Ed. 1152 (1912).

7. This was an action brought by an automobile purchaser against the manufacturer, alleging negligent failure to inspect defective wheels. Plaintiff obtained judgment, but this court reversed on the ground that no contractual relationship existed between the parties. 221 F. 801 (2d Cir. 1915). After a second trial (without a jury) the same facts were found as to negligence, but the trial court, relying on this court's ruling, dismissed the action because there was no proof of the requisite contractual relationship. Plaintiff appealed, and this court held that the proper rule of law was not that stated in the prior appeal, but rather that stated in the subsequent decision of the New York Court of Appeals in MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), that a contractual relationship is not a prerequisite to liability in such circumstances. (Because these events transpired before the decision in Erie R. R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L. Ed. 1188 (1938), the federal courts were not

bound to treat the *MacPherson* decision as controlling. It has since been held that, in a case where *Erie* applies, a change in state law must be given effect by a federal court, even if that means changing the law of the case. Jones v. Schellenberger, 225 F.2d 784, 791 (7th Cir. 1955), cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956)). Recognizing that this decision was contrary to the law of the case as established on the prior appeal, Judge Rogers, writing for the majority, stated that this rule

is not an inexorable one, and should not be adhered to in a case in which the court has committed an error which results in injustice, and at the same time lays down a principle of law for future guidance which is unsound and contrary to the interests of society.

261 F. at 886.

8. In Hatch v. Morosco Holding Co., 26 F.2d 247 (1928), aff'd sub nom. Riehle v. Margolies, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929), this court, referring to a prior decision in the same case, 19 F.2d 766 (2d Cir. 1927), stated that "in the same case and on the same claim the first ruling must stand."

*Fernandez II* itself intimated that an appellate court can revise its ruling made in a prior appeal on the basis of new evidence. In *Fernandez I*, we held that a photographic identification was conducted under unnecessarily suggestive circumstances, but indicated that it appeared quite clear that the witnesses who made those identifications would be able to make in-court identifications free of taint. In *Fernandez II*, on the basis of evidence that had not been available on the prior appeal, we noted that the latter proposition was "considerably closer" than we had previously thought. 480 F.2d at 736.[9]

To be sure, the discretion of a court to review its earlier decisions is one which should be exercised sparingly, so as not to undermine the salutary policy of finality of adjudication that is the basis of the law of the case rule. *See, Johnson, supra,* 261 F. at 886 ("injustice" and "unsound" principle of law led to departure from rule); Hammond-Knowlton v. United States, 121 F.2d 192, 205 (2d Cir.), cert. denied, 314 U.S. 694, 62 S.Ct. 410, 86 L.Ed. 555 (1941) ("seriously incorrect" earlier rule). *Cf.,* Petition of United States Steel Corporation, 479 F.2d 489, 494 (6th Cir. 1973). But the district court's emphatic finding that the danger to the informants was, to say the least, overstated, coupled with the fact that the sealed exhibit which formed the basis for the district court's decision was not before us in *Fernandez II,* prompts us to reconsider our earlier holding. Upon examination of the sealed exhibit,[10] we are in agreement with the district court that the government's claim of danger is doubtful. The district court's description of the individuals as "public officials" and "not the normal type informants" is quite accurate, and we suppose that skilled defense counsel could use their status in the community in order to lend weight to their desired testimony identifying the robber as one other than Fernandez in terms of credibility—more so, certainly, than if they were the somewhat sleazy individuals generally thought of as "the normal type informants." [11] This extra weight might be all the more helpful at this stage of the proceedings since another eyewitness to the robbery who said that the participant alleged to be Fernandez was 5'6'' tall (Fernandez is 6') died after the second trial.[12]

■ There is before us no convincing showing of substantial danger, and since these individuals do not provide a continuing source of information to the

---

We take this to mean that the Court was declining to exercise its discretion to review the law of the case as established on the prior appeal, and not that it was disclaiming the power to do so. The prior decision referred to had itself changed the law of the case established by yet an earlier appeal. 5 F.2d 1015 (2d Cir. 1925). In addition, a disclaimer of power would have been contrary to the Supreme Court's decisions in Southern Ry. v. Clift, *supra,* n. 6, and Messenger v. Anderson, *supra,* n. 6.

9. Of course, this implication does not rise to the dignity of a holding. The Fifth Circuit, however, has explicitly stated that an appellate court may re-examine its ruling in a prior appeal of the same case where "much evidence appear[s] in the second appeal that [was] not directly presented in the first." Commercial National Bank in Shreveport v. Connolly, 176 F.2d 1004, 1006 (5th Cir. 1949) (en banc).

10. Sealed affidavits as to the danger to the informants were supposedly also provided the court. They have not been found in the court files and the government has not produced them or copies thereof for our inspection.

11. For an extreme example, see the description of the informant Lipsky in United States v. Mallah, 503 F.2d 971, 977–979 (2d Cir. 1974).

12. This fact was not before the court in *Fernandez II.* Fernandez claims that the identity of this witness was withheld from him by the government, and that this was part of an overall course of conduct designed to deny him a fair trial. The government claims that it disclosed the identity of this witness. While we need not resolve this issue, we do note that this case has been dragging on so interminably largely because of the manner in which the government has chosen to prosecute it. *See, Fernandez II,* 480 F.2d at 741 & n. 23.

government, there is little occasion in this case to consider a *Roviaro* balance. Their testimony would be exculpatory, and since the defense may be able to make something of it in view of their apparent credibility, their identities should be disclosed as *Brady* material. United States ex rel. Meers v. Wilkins, 326 F.2d 135 (2d Cir. 1964). To the extent that *Fernandez II* is to the contrary, it should not be treated as controlling on remand; rather the trial court should again direct the government to disclose the informants' identities. If the government persists in its refusal, the indictment should be dismissed.

Reversed and remanded, with directions.