UNITED STATES of America, Appellee,

v.

Kofoworola ADEGBITE, a/k/a "Gbenro," and Joseph Obalaja, a/k/a "Niran," Defendants–Appellants.

Nos. 964, 972, Dockets 88–1565, 88–1566.

United States Court of Appeals, Second Circuit.

Argued April 21, 1989.

Decided June 5, 1989.

Before KEARSE, ALTIMARI and MAHONEY, Circuit Judges.

KEARSE, Circuit Judge:

Defendants Kofoworola Adegbite and Joseph Obalaja appeal from judgments entered in the United States District Court for the Eastern District of New York after a jury trial before Edward R. Korman, *Judge*, convicting each of them on one count of importation of heroin, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(2)(A) (1982 & Supp. V 1987), and 18 U.S.C. § 2 (1982); and one count of conspiracy to import heroin, in violation of 21 U.S.C. §§ 960(a)(1), 960(b)(2)(A), and 963 (1982 & Supp. V 1987). Each was sentenced to five years' imprisonment on the importation count and three years' imprisonment on the conspiracy count, to be served concurrently, followed by five years' supervised release, and was ordered to pay special assessments totaling $100. On appeal, defendants seek a reversal of this Court's prior ruling that certain evidence should not be suppressed, *see United States v. Adegbite*, 846 F.2d 834 (2d Cir. 1988) ("*Adegbite I*"), and challenge the sufficiency of the evidence to convict them even without suppression of that evidence. For the reasons below, we affirm the judgments of conviction.

## I. BACKGROUND

The events underlying the present prosecution are fully set forth in *Adegbite I*, familiarity with which is assumed. Briefly summarized, the evidence at the pretrial suppression hearing, which was substantially repeated at trial, showed the following.

Law enforcement agents intercepted one Olasogi Olukoya arriving at John F. Kennedy International Airport in New York on an international flight with approximately a half pound of heroin in his possession. Olukoya informed agents of the United States Drug Enforcement Administration ("DEA") that he was to deliver the heroin to a man called "Niran," whose telephone number was (301) 485–9597. Under DEA

David C. James, Asst. U.S. Atty., Brooklyn, N.Y. (Andrew J. Maloney, U.S. Atty. for the Eastern District of New York, John Gleeson, Asst. U.S. Atty., Brooklyn, N.Y., on the brief), for appellee.

Michael E. Deutsch, Chicago, Ill. (Elizabeth M. Fink, Brooklyn, N.Y., on the brief), for defendant-appellant Adegbite.

Richard I. Rosenkranz, Brooklyn, N.Y., for defendant-appellant Obalaja.

supervision, Olukoya placed recorded calls to that number and spoke to a man called "Gbenro" in Yoruba, a Nigerian dialect; they discussed the quantity and delivery of the heroin. In subsequent calls to that number, Olukoya talked with both Gbenro and Niran about delivery of the heroin. Thereafter, a United States Magistrate issued "John Doe" arrest warrants for two men with the nicknames or aliases "Niran" and "Gbenro."

DEA agents in Maryland thereafter obtained an accurate address to which the telephone number was registered, 4410 Franconia Drive in Baltimore, and, when the telephone number was changed, obtained the new number. Calling the new number, an agent was advised that Gbenro and Niran, though resident there, were not then available but would be the next morning. On the following morning, four law enforcement officials went to 4410 Franconia Drive. As two men, deemed by the agents to be Nigerians because of their appearance, began to leave in an ice cream truck, two agents on foot flagged them down. When the truck stopped, the agents identified themselves and requested identification from the driver. The latter produced a driver's license in the name of Joseph Adeniran Obalaja; the agents noticed that the latter portion of his middle name was "niran," the nickname on one of the arrest warrants.

The other two agents approached the truck and asked the passenger, Adegbite, for identification. Adegbite responded that his identification was in his room and he asked if he could retrieve it. Accompanied by DEA Agent Joseph Dombroski and a local police detective, Adegbite proceeded to his room in the building at 4410 Franconia Drive but was unable to produce any identification. When DEA Agent Gerald Masiello arrived in the apartment, he asked Adegbite if he had any identification and told him it would be in his best interest to produce some. When no identification was forthcoming, Masiello asked him, "You are Gbenro, aren't you?" Adegbite responded affirmatively. The agents then placed both Adegbite and Obalaja under arrest.

## A. The Ruling in Adegbite I

Prior to trial, defendants moved to suppress prearrest statements made by them and physical evidence taken from Obalaja. The district court ruled that the agents did not have reasonable suspicion to believe the two men in the ice cream truck were the men listed in the warrants and that waving down the truck thus constituted an improper seizure under the Fourth Amendment. The court suppressed Adegbite's acknowledgement that he was "Gbenro" on the additional ground that Adegbite was in custody for Miranda purposes and that the response was the fruit of an unlawful custodial interrogation.

On appeal by the government pursuant to 18 U.S.C. § 3731 (1982 & Supp. V 1987), we reversed both rulings. Adegbite I, 846 F.2d 834. With respect to the stop of the truck, we discussed Supreme Court cases such as United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980); Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983); Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984); and Delaware v. Prouse, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), and stated as follows:

> The test provided by the Supreme Court for determining what constitutes a "seizure" under the fourth amendment, and the point in time when any seizure occurs, is whether "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."

846 F.2d at 837 (quoting Mendenhall, 446 U.S. at 554, 100 S.Ct. at 1877 (opinion of Stewart, J.)). We noted that the agents in the present case had been in plain clothes and had merely waved their arms at the truck to flag it down. When it stopped, two agents identified themselves and asked the driver to identify himself. Thereafter, the other two agents left their car, walked to the other side of the truck, and requested identification of the passenger. Both pairs of agents had approached the truck without display of either badges or guns, and there had been no show of force or

authority. We concluded that the defendants had not been "seized" within the meaning of the Fourth Amendment. *See Adegbite I,* 846 F.2d at 838. We also concluded that all of the information possessed by the agents gave them the requisite reasonable suspicion to pursue their request for identification. *Id.*

As to the suppression of Adegbite's acknowledgement that he was "Gbenro," we reversed on the ground that "the solicitation of information concerning a person's identity and background does not amount to custodial interrogation prohibited by *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) . . . ." 846 F.2d at 838.

B. *Proceedings on Remand*

On remand, the previously suppressed evidence was admitted at defendants' trial on the charges of importation of and conspiracy to import heroin. The jury found both defendants guilty, and they were sentenced as indicated above.

After trial, the district court wrote an opinion reiterating its pretrial view that the evidence should have been suppressed. The court stated as follows:

Because the defendant has indicated that he intends to raise this issue again on appeal, and because the testimony at trial has significantly supplemented the record, I write now to set forth in a more detailed manner the reasons for my pretrial order.

The record of the suppression hearing, as supplemented by the testimony of Agent Masiello at trial, shows that, prior to the time he "asked Adegbite once again if he had any identification, and told him it would be in his best interest to produce some" and finally received an affirmative response to the question "you are Gbenro, aren't you", [846 F.2d] at 836, Adegbite had identified himself as Kofoworola Adegbite and had written his name down on a piece of paper . . . . The purpose of Agent Masiello's further questioning was to elicit incriminating information . . .:

Q. Isn't it a fact, Agent, that it would have been better for your case if you got him to admit that his name was Gbenro?

\* \* \* \* \* \*

A. Yes, sir.
Q. That is the name you were looking for; is that right?
A. Yes.
Q. That is the identification you were looking for?
A. That's correct.
Q. That is what you needed in order to make this case against this defendant; is that correct?
A. That's correct.

What distinguishes this interrogation from the pedigree statements taken from defendants as part of the post-arrest process is the purpose of the interrogation. Specifically, in *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), the Supreme Court defined interrogation for *Miranda* purposes as including any questioning "that the police should know is reasonably likely to evoke an incriminating response from a suspect." *Id.* at 301, 100 S.Ct. at 1689–90.

Unlike questions put to a defendant during the booking process, which are intended to elicit routine information of a nature essential to facilitate the arrest and arraignment of the defendant, Agent Masiello candidly admitted that the question he was asking sought information that he "needed in order to make this case against this defendant," . . . .

District Court Memorandum, 713 F.Supp. 559, 560–61 (1988) ("Memorandum") (footnote omitted). The district court concluded as follows:

The questioning at issue here was not "innocent of any investigative purpose" and it was not intended to obtain basic identifying data required for booking and arraignment, i.e., the kind of information that does not normally entail a "substantial risk of self-incrimination." *California v. Byers,* 402 U.S. 424, 431, 91 S.Ct. 1535, 1539, 29 L.Ed.2d 9 (1971). Accordingly, it was my view that the applicable

case law compelled suppression of the pre-arrest statement.

Memorandum, 713 F.Supp. at 561.

## II. DISCUSSION

On appeal, defendants urge us to reconsider our rulings in *Adegbite I.* In addition, each defendant contends that the evidence at trial was insufficient to convict him. We reject their contentions.

### A. *The Law of the Case*

█ Under the law-of-the-case doctrine, we will generally adhere to our own earlier decision on a given issue in the same litigation. *See, e.g., Doe v. New York City Department of Social Services,* 709 F.2d 782, 789 (2d Cir.), *cert. denied,* 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *United States v. Fernandez,* 506 F.2d 1200, 1203 (2d Cir.1974). Though the issue is not closed with all of the finality of *res judicata, id.,* and though in appropriate circumstances we may exercise our discretion to review the earlier ruling, the strong policy favoring finality impels us to exercise the power to review such rulings only sparingly, *see, e.g., United States v. Diaz,* 834 F.2d 287, 289 (2d Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988); *McClain v. United States,* 676 F.2d 915, 917 (2d Cir.), *cert. denied,* 459 U.S. 879, 103 S.Ct. 174, 74 L.Ed.2d 143 (1982); *United States v. Fernandez,* 506 F.2d at 1203–04.

█ Any of three circumstances may justify reconsideration of an earlier decision in the case: (1) an intervening change in controlling law, (2) new evidence, or (3) the need to correct a clear error of law or to prevent manifest injustice. *See, e.g., Doe v. New York City Department of Social Services,* 709 F.2d at 789; *see also United States v. Fernandez,* 506 F.2d at 1203–04. As to the third circumstance, we will not review the decision unless we have "a clear conviction of error on a point of law that is certain to recur"; " 'mere doubt' will not" suffice. *Zdanok v. Glidden Co.,* 327 F.2d 944, 953 (2d Cir.), *cert. denied,* 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964). None of these circum-

stances warrants reconsideration of the rulings made in *Adegbite I.*

### 1. *The Stop of the Truck*

Defendants do not contend that there has been any intervening change of the law or that any new facts emerged with regard to the question of whether the agents "seized" the truck. Rather, they argue that "[t]he United States Supreme Court has consistently held that an investigatory stop of a moving vehicle and the resultant detaining of its occupants, constitutes a seizure under the Fourth Amendment," and that our ruling that the stop of the truck was not a seizure should be reconsidered "in the interests of justice." We disagree.

Though defendants would have us rule that any stop of a vehicle is a Fourth Amendment seizure, the Supreme Court has eschewed such bright-line rules in favor of the totality-of-the-circumstances test we applied in *Adegbite I.* In *Michigan v. Chesternut,* 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988), decided after *Adegbite I,* the Court stated that the parties'

> attempts to fashion a bright-line rule applicable to all investigatory pursuits, have failed to heed this Court's clear direction that any assessment as to whether police conduct amounts to a seizure implicating the Fourth Amendment must take into account " 'all the circumstances surrounding the incident' " in each individual case.

*Id.* (quoting *Delgado,* 466 U.S. at 215, 104 S.Ct. at 1762 (quoting *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877 (opinion of Stewart, *J.*))). In *Chesternut,* the Court used the test that *Adegbite I* had distilled from several of the opinions in *Mendenhall, Delgado,* and *Royer.* The test embraced in *Chesternut* "provides that the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " 108 S.Ct. at 1979 (quoting *Mendenhall,* 446 U.S. at 554, 100 S.Ct. at 1877 (opinion of Stewart, *J.*), and citing *Delgado,* 466 U.S. at 215, 104

S.Ct. at 1762; and *Royer,* 460 U.S. at 502, 103 S.Ct. at 1326 (plurality opinion), and at 514, 103 S.Ct. at 1332–33 (opinion of Blackmun, J.)). The test is "designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Michigan v. Chesternut,* 108 S.Ct. at 1979. In *Chesternut,* the Court concluded that the conduct of officers driving their marked police car alongside a pedestrian who had begun to run when he saw the police car did not constitute a seizure because that pursuit

> would not have communicated to the reasonable person an attempt to capture or otherwise intrude upon respondent's freedom of movement. The record does not reflect that the police activated a siren or flashers; or that they commanded respondent to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block respondent's course or otherwise control the direction or speed of his movement.... Without more, the police conduct here—a brief acceleration to catch up with respondent, followed by a short drive alongside him—was not "so intimidating" that respondent could reasonably have believed that he was not free to disregard the police presence and go about his business.

*Id.* at 1980–81 (footnotes omitted).

The test applied to the present case in *Adegbite I* remains the appropriate test in light of *Chesternut,* and we decline to reconsider our ruling that the agents' conduct in waving the ice cream truck to stop, with no display of badges, guns, force, or authority, did not constitute a seizure within the meaning of the Fourth Amendment.

### 2. *"You are Gbenro, aren't you?"*

Adegbite contends that there is new evidence warranting reconsideration of our prior ruling reversing suppression of his acknowledgement, in response to Masiello's question, that Adegbite was called "Gbenro." While the district court did indeed advert to trial testimony in explaining its pretrial view that this evidence should be suppressed, we see no new evidence that requires reconsideration of our ruling.

The district court pointed out that before Masiello asked Adegbite whether he was Gbenro, Adegbite had already told the officers his name was "Kofoworola Adegbite" and had written it down for them. The court was of the view that the "questioning at issue here was not 'innocent of any investigative purpose' and it was not intended to obtain basic identifying data required for booking and arraignment," and that Masiello asked the question because he "sought information that he 'needed in order to make this case against this defendant.'" This analysis loses sight of the circumstances of the present case. The fact that Adegbite had said his name was "Kofoworola Adegbite" could hardly end the agents' inquiry of him, for that name did not appear in the arrest warrant. The only name on that warrant other than "John Doe" was "Gbenro." The agents did not have a detailed description of the appearance of Gbenro. In order to determine whether Adegbite was the person named in the warrant, the agents had little alternative but to ask him whether he was "Gbenro." Even where agents are familiar with the appearance of the person named in an arrest warrant, "[a]s a cautionary measure, police usually prudently inquire as to the suspect's name to ensure that the wrong person is not apprehended." *United States v. Carmona,* 873 F.2d 569, 573 (2d Cir.1989). Thus, while Masiello testified that he knew an affirmative answer to his question would help to make his case, that knowledge was not, in the present case, the equivalent of an improper intent to elicit incriminating evidence.

In sum, though the acknowledgement that Adegbite was Gbenro would obviously have evidentiary value, we see no sound reason to reconsider our earlier ruling that the agents here were not required to give Adegbite *Miranda* warnings before determining whether he was the person they were supposed to arrest.

### B. *Sufficiency of the Evidence*

█ In challenging the sufficiency of the evidence to support his conviction, a defen-

dant bears a heavy burden. *United States v. Esdaille,* 769 F.2d 104, 108 (2d Cir.), *cert. denied,* 474 U.S. 923, 106 S.Ct. 258, 88 L.Ed.2d 264 (1985); *United States v. Martino,* 759 F.2d 998, 1002 (2d Cir.1985); *United States v. Losada,* 674 F.2d 167, 173 (2d Cir.), *cert. denied,* 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982). In reviewing such a challenge, we must credit every inference that could have been drawn in the government's favor, *United States v. Bagaric,* 706 F.2d 42, 64 (2d Cir.), *cert. denied,* 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128 (1983); *United States v. Carson,* 702 F.2d 351, 361 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2457, 77 L.Ed.2d 1335 (1983), and we must affirm the conviction so long as, from the inferences reasonably drawn, the jury might fairly have concluded guilt beyond a reasonable doubt, *United States v. Buck,* 804 F.2d 239, 242 (2d Cir.1986); *United States v. Taylor,* 464 F.2d 240, 244–45 (2d Cir. 1972). These principles apply whether the evidence being reviewed is direct or circumstantial. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942). Defendants have not met their burden here.

The government's proof at trial included evidence that the defendants came under suspicion because they answered the telephone at the number Olukoya had been given in order to contact the person who was to receive the imported heroin. Olukoya was to deliver the heroin to a person named Niran; calling the number given him, Olukoya had telephone conversations concerning the arrival, price, quantity, and delivery of the heroin with persons called Niran and Gbenro. Defendants were nicknamed Niran and Gbenro. In addition, the jury was entitled to consider Adegbite's stated reason for nonproduction of his identity papers, *i.e.,* that all of his identification was in the possession of his brother in Memphis, Tennessee, as deliberate evasiveness that bespoke a consciousness of guilt. Defendants contend that they substantially undercut the government's case by presenting (a) evidence that "Niran" and "Gbenro" are common Nigerian nicknames, and (b) expert evidence that their voice

exemplars did not match the voices in the recorded telephone conversations. These arguments, however, go to the weight of the evidence, not to its sufficiency. The choice between the conflicting views of the parties' expert witnesses, and, indeed, the determination of what weight to give to any piece of evidence, were within the province of the jury. We conclude that from all the evidence, a rational juror could have concluded beyond a reasonable doubt that both defendants were guilty of the charges against them.

## CONCLUSION

The judgments of conviction are affirmed.