**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COCA–COLA BOTTLING COMPANY OF BUFFALO, Respondent.**

**No. 1604, Docket 91–4022.**

United States Court of Appeals, Second Circuit.

Argued May 30, 1991.

Decided June 27, 1991.

James A. Prozzi, Jackson, Lewis, Schnitzler & Krupman, Pittsburgh, Pa., for respondent.

David Seid, Atty., N.L.R.B., Washington, D.C. (Linda Dreeben, Supervisory Atty., Jerry M. Hunter, Gen. Counsel, D. Randall Frye, Acting Deputy Gen. Counsel, Aileen A. Armstrong, Deputy Associate Gen. Counsel, of counsel), for petitioner.

Before OAKES, Chief Judge, and KAUFMAN and WALKER, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

The National Labor Relations Board (the "Board"), petitioner, seeks enforcement of its order against the Coca–Cola Bottling Company (the "Company"), Respondent, reported at 299 NLRB No. 152 (1990). The order requires, *inter alia,* that the Company cease the following unfair labor practices. It must discontinue its refusal to recognize and bargain with Local Union 558 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO as the exclusive bargaining representative of employees at its warehouse located in Orchard Park, New York. It may no longer negotiate directly with Orchard Park employees who are represented by the Union, nor may it inform prospective employees of the Orchard Park facility that they will not be represented by a union. The order also compels the Company to treat its Orchard Park employees according to the terms of its collective-bargaining agreement with the Union regarding employees at its facility in Tonawanda, New York.

The Board's order affirmed the findings and conclusions of the administrative law judge, but it modified his analysis of the legal status of the Orchard Park warehouse. The judge had predicated his ruling on a determination that the small warehouse is an "accretion" to the Company's nearby Tonawanda facility. The Board, however, found that Orchard Park is merely a "spin-off" of the pre-existing unit. With that caveat, the Board adopted the judge's recommended order. In this enforcement proceeding, the Company challenges the correctness of the Board's determination.

## BACKGROUND

The case was tried before an administrative law judge of the National Labor Relations Board in February of 1989. The Judge's findings of fact form the backdrop of this dispute.

The Coca–Cola Bottling Company of Buffalo is a New York State corporation with its principal office and place of business in Tonawanda, New York and a warehouse facility in Orchard Park, New York. The Company is engaged in the production and wholesale distribution of soft drink products in the New York State region. The instant lawsuit arises out of charges filed against the Company in September, 1988 by the Market Produce, Warehouse, Frozen Food, Cannery Workers, Drivers, Helpers, Local Union 558, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO (the "Union")—a labor organization within the meaning of § 2(5) of the National Labor Relations Act (the "Act").

The Tonawanda production and warehouse facility has been in use since 1969. There, the Company produces Coca–Cola and organizes distribution of Coca–Cola and Canada Dry products throughout Western New York State. Approximately twenty-five unit workers are employed at the Tonawanda facility. The Union has represented the Company's Tonawanda production and warehouse employees for more than a decade.

In January of 1987, the Company began contemplating creation of a small satellite warehouse to assist Tonawanda in meeting its distribution demands. Production would continue to occur solely at the Tonawanda facility. The Union, aware of this plan, attempted to reserve in its 1987–1990 collective-bargaining agreement the right

to staff any new facility by seniority. The Company offered a counter proposal whereby it would agree to the Union's right to staff new *production* facilities by seniority. Though the Company gave verbal assurances to the Union that it would have the right to organize any new *warehouse* facility as well, the contract ultimately signed by the parties contained the Company's version of the clause. Nonetheless, there was nothing in the agreement constituting a waiver by the Union of its right to represent employees of any new warehouse facility the Company might establish. The collective-bargaining agreement signed by the parties extended for a three year period, from 1987 until 1990.

Respondent opened its satellite warehouse in Orchard Park in July of 1988. Located some twenty miles from Tonawanda, the new warehouse is significantly smaller than the older facility—it can only accommodate one delivery truck while the other manages five—and it operates exclusively as a warehouse, with no capacity for production. Orchard Park was designed as a base of distribution for the southern portion of the Company's New York territory which, up until then, had been serviced entirely from Tonawanda. In all, Respondent transferred approximately thirty percent of its existing Tonawanda distribution accounts to the Orchard Park facility.

Prior to opening the operation at Orchard Park, the Tonawanda warehouse supervisor, Robert Riggs, informed several senior unit employees of the proposed expansion. Riggs also told them that the new facility would be staffed with three non-Union warehousemen, with similar levels of pay, seniority and slightly increased benefits.

Instead of functioning as an independent, self-sufficient entity, the Orchard Park facility is essentially operated by management personnel at Tonawanda. With regard to its daily operations, products arrive at Orchard Park for distribution at least two times a day from Tonawanda. Orchard Park employees collect the products from Tonawanda, where they must "punch in and out" with each visit. Warehouse-

men at both facilities are trained to do virtually the same work; their jobs consist primarily of loading trucks for delivery and "stripping" (unloading) products from the trucks for storage at the warehouses. Placement of products in trucks emanating from either facility is determined by "load maps" drafted daily by Tonawanda supervisors. In addition, all trucks dispatched from Orchard Park, and other equipment there, are serviced and maintained by Tonawanda mechanics.

More telling of the integral connection between the two facilities is the undisputed centralization of management. Tonawanda managers are responsible for supervising employees at both sites. Specifically, though each facility has a "warehouse supervisor" in charge of day-to-day employee relations, both report to a single "company operations manager" based at Tonawanda. In addition, supervisors at Tonawanda make all personnel decisions, such as the hiring of employees, determination of work schedules and pay raises, and authorization of vacation time. The Orchard Park supervisor handles none of these issues.

Shortly after the Company established its facility in Orchard Park, the Union sought recognition that its collective-bargaining agreement on behalf of the Tonawanda employees extended to workers at the new location. The Union also requested the Company to recognize it as the labor representative for its Orchard Park employees. When the Company refused on both counts, the Union filed charges of unfair labor practices with the labor relations board.

In its complaint, the Union charged the Company with violating §§ 8(a)(1) and (5) of the Act by refusing to apply the terms and conditions of its existing collective-bargaining agreement with the Union to employees hired to staff its warehouse at Orchard Park. Sections 8(a)(1) and (5) of the National Labor Relations Act provide, in pertinent part:

(a) It shall be an unfair labor practice for an employer—

(1) to interfere with, restrain, or coerce employees in the exercise of the

rights guaranteed in section 157 of this title;

(5) to refuse to bargain collectively with the representatives of his employees ...

A two-day trial was held before an administrative law judge in 1989. The judge found Orchard Park to be an accretion to the Tonawanda facility, noting "the Board has found a valid accretion ... when the additional employees have little or no separate group identity, and thus cannot be considered to be a separate unit." The judge then proceeded to consider other factors which tend to indicate whether there is a "community of interests" between the two units, finding, *inter alia,* "almost total centralization of management and supervision with respect to all facets of Respondent's operation" at Tonawanda, and "almost total functional integration" between the Tonawanda and Orchard Park facilities.

Pursuant to the theory that employees of an accreted job site can be added to the existing bargaining unit without a vote on the issue, the judge held the Union properly to represent Orchard Park employees. He accordingly found the terms of their employment to be incorporated in the collective-bargaining agreement negotiated on behalf of the Tonawanda warehousemen in 1987. In an order dated August 16, 1989, the judge required the Company to meet the Union's demands with regard to the Orchard Park employees.

The National Labor Relations Board heard the Company's appeal and affirmed the judge's decision in an order dated September 27, 1990. The Board agreed that the Company had violated §§ 8(a)(1) and (5) of the Act by refusing to recognize the Union as representative of the Orchard Park employees and by failing to apply terms of the collective-bargaining agreement governing operations at the Tonawanda facility. It disagreed, however, with the judge's characterization of the Orchard Park warehouse as an accretion to the Tonawanda facility. Rather, the Board predicated its affirmance upon Orchard Park's status as a "spin-off" of the existing facili-

ty. For reasons set forth below, we agree with the Board's rationale and hereby enforce its order against the Coca-Cola Company.

## DISCUSSION

When reviewing an order of the National Labor Relations Board which adopts factual findings of an administrative law judge, we deny enforcement only where the underlying findings are not supported by "substantial evidence on the record considered as a whole." *Grandee Beer Distributors, Inc. v. NLRB,* 630 F.2d 928, 932 (2d Cir.1980) (citing *Universal Camera Corp. v. NLRB,* 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951)). In addition, it must be noted that the Board has broad discretion when passing on the appropriateness of disputed bargaining units. *National Labor Relations Board v. Stevens Ford, Inc.,* 773 F.2d 468, 472 (2d Cir.1985) (citing *South Prairie Construction Co. v. Local 627, International Union of Operating Engineers,* 425 U.S. 800, 805, 96 S.Ct. 1842, 1844, 48 L.Ed.2d 382 (1976) (*per curiam* )). With these guidelines in mind, we proceed to consider the substance of the Board's ruling.

The Board agreed with the administrative law judge's factual findings regarding the nature of the relationship between the Tonawanda and Orchard Park facilities. In affirming his decision, however, the Board interpreted the evidence to have alternate legal significance. Specifically, while the judge concluded that the Orchard Park warehouse constituted an accretion to the Tonawanda facility, the Board gleaned its legal status to be that of a spin-off unit. Despite this difference in designation, the Board agreed that the Orchard Park employees are represented by the Union and are covered under the terms of its collective-bargaining agreement with the Company.

In deciding that Orchard Park was merely a spin-off of the Respondent's warehousing operation in Tonawanda, the Board relied upon its decision in *Rice Food Markets, Inc.,* 255 NLRB 884 (1981). In that case, the Board ruled that transfer of a

retail food chain's liquor department to separate stores managed by a wholly-owned subsidiary effectuated a spin-off of the primary business. Thus, the Board determined that "accretion principles are not precisely applicable here ... because the 'new' facilities at issue ... are not wholly new, either in function, in staffing, or in location." *Rice Food Markets*, 255 NLRB at 886.

Similarly, the Board concluded in this case that the warehouse at Orchard Park is not sufficiently distinct to constitute an accretion to existing operations—it merely reflects an expansion of Respondent's principal warehousing operations in nearby Tonawanda. Where the administrative judge found the "almost total functional integration" between Tonawanda and Orchard Park to signify an accretion, the reviewing panel found that fact instead suggestive of a spin-off.

■ For purposes of legal analysis in labor disputes over the composition of bargaining units, the most significant distinction between an accretion and a spin-off lies in allocation of the burden of proof. As the Board noted in *Rice Food Markets*—and reiterated in the instant ruling— any party attempting to circumvent formal procedures for expansion or contraction of the bargaining unit bears a heavy burden of proving the legitimacy of such action.

If, for example, a union argues that a job site is an accretion to a pre-existing operation and, therefore, that its employees automatically should be considered party to an existing collective-bargaining agreement, the Board will require the union to establish that the new group of employees is so similar to the original that accretion into the existing bargaining unit is appropriate. This is to prevent the danger the Board foresees of such action denying workers an opportunity to ratify their representation.

Conversely, in cases such as the present one, where an employer establishes an adjunct work site and attempts to staff it with non-union workers, though its pre-existing work force is organized, the Board will look to that employer to establish suffi-cient justification for its actions. As the Board held in *Rice Food Market:*

> When, as here, an employer attempts to justify *removing* a particular group or groups from the coverage of a collective-bargaining agreement or relationship, it has the burden of showing that the group is sufficiently *dissimilar* from the remainder of the unit so as to warrant that removal.

255 NLRB at 887. Applying the burden of proof as enunciated in *Rice Food Markets*, the Board found Respondent had failed to show "sufficient dissimilarity" between the employee groups at Tonawanda and Orchard Park to justify the latter's non-union designation. Thus, the Board refused to upset the ruling which ordered the Company to bargain with the Union as representative of the Orchard Park employees, and which deemed them to be incorporated in the 1987 collective-bargaining agreement.

■ Having reviewed the record to determine if substantial evidence supports the Board's adoption of the administrative law judge's findings, we agree that the orders below should be enforced. It is apparent, from the facts adduced at trial, that the Orchard Park facility was instituted by the Company to ease its pre-existing distribution burden and is thus properly viewed as a spin-off.

Almost thirty percent of Tonawanda's customer accounts, reflecting coverage of its southern territory, were transferred to the new satellite warehouse. Three of its four warehouse employees were brought over from the nearby Tonawanda facility. In addition, all significant managerial and hiring decisions—as well as the nuts and bolts of daily delivery schedules—continue to emanate from supervision personnel at Tonawanda. In sum, operations at Orchard Park are entirely dependent upon constant input from management at Tonawanda: if Tonawanda does not supply the products, Orchard Park has none to dispatch; if Tonawanda does not generate load maps, trucks at Orchard Park cannot be loaded; if Tonawanda does not approve pay raises, Orchard Park employees do not receive them.

We thus agree with the Board that the Orchard Park facility is properly viewed as a spin-off. Because the Company did not meet its burden of establishing dissimilarity between the employee groups, it was required under the NLRA to recognize the Union as the collective bargaining representative of the Orchard Park employees. The Board correctly concluded that the Company violated §§ 8(a)(1) and (5) of the NLRA by refusing to recognize the Union and by refusing to manage the Orchard Park employees under the terms of the collective bargaining contract governing the Tonawanda facility.

## CONCLUSION

Accordingly, we conclude that the Orchard Park warehouse is a spin-off of the Tonawanda facility. As such, its employees are subject to the terms of the collective-bargaining agreement negotiated in 1987 between the Union—their rightful representative—and the Coca–Cola Bottling Company of Buffalo, New York. We, therefore, enforce the Board's orders against the Company and direct immediate compliance therewith.