**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COCA–COLA BOTTLING COMPANY OF BUFFALO, INC., Respondent.**

**No. 705, Docket 94–4096.**

United States Court of Appeals, Second Circuit.

Argued Nov. 29, 1994.

Decided May 17, 1995.

Joan E. Hoyte, Atty., N.L.R.B., Washington, DC (Frederick L. Feinstein, General Counsel, Linder Sher, Acting Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, Margaret Gaines Neigus, Supervisory Atty., N.L.R.B., Washington, DC, of counsel), for petitioner.

James A. Prozzi, Pittsburgh, PA (Jackson, Lewis, Schnitzler & Krupman, Pittsburgh, PA, of counsel), for respondent.

Before: MAHONEY, McLAUGHLIN, and HEANEY,* Circuit Judges.

MAHONEY, Circuit Judge:

Petitioner National Labor Relations Board (the "NLRB" or the "Board") seeks enforcement of its order dated April 13, 1994 (the "Order"), which adopted a supplemental decision of Administrative Law Judge Robert T. Snyder dated March 31, 1993, as amended in minor particulars by the Order. *Coca–Cola Bottling Co.*, 313 NLRB 1061, 1994 WL 135228 (1994). Judge Snyder's decision ordered Respondent Coca–Cola Bottling Company of Buffalo, Inc. ("Coca–Cola") to pay $16,690.62 in backpay to, and $10,970.30 in pension fund contributions on behalf of, three Coca–Cola employees, John McKissock, Melvin Mingoia, and Michael Haug (the "Employees"), who were the subject of unfair labor practices by Coca–Cola. The Order followed our decision in *NLRB v. Coca–Cola Bottling Co.*, 936 F.2d 122 (2d Cir.1991) ("*Coca–Cola II*"), which enforced a 1990 NLRB determination that Coca–Cola had vi-

* The Hon. Gerald W. Heaney of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

olated the National Labor Relations Act § 8(a)(1) and (a)(5), 29 U.S.C. § 158(a)(1) and (a)(5). *See Coca–Cola Bottling Co.*, 299 NLRB 989, 1990 WL 155358 (1990) (*"Coca–Cola I"*).

On appeal, Coca–Cola argues that: (1) the Order should not be enforced because there has been a significant, intervening change in the law and Coca–Cola would not be liable for backpay and pension fund contributions under the new law; (2) the NLRB's general counsel failed to establish the backpay owed to McKissock; and (3) the Board erred in ordering Coca–Cola to make contributions on behalf of the Employees to the New York State Teamsters Conference Pension and Retirement Fund (the "Union Fund") because Coca–Cola had been making equivalent payments into its own pension fund on their behalf.

We address only Coca–Cola's first contention. We deny enforcement of the Order, and remand for the NLRB to determine, in the first instance, whether to apply in this case its decision in *Gitano Group, Inc.*, 308 NLRB 1172, 1175–76 & nn. 18–23, 1992 WL 281657 (1992), to abandon the "spinoff" rule upon which the Board relied in deciding *Coca–Cola I.*

## Background

The facts underlying the NLRB's unfair labor practices charges are fully set forth in *Coca–Cola I* and *Coca–Cola II,* and are recounted here summarily.

In 1988, Coca–Cola established its Orchard Park facility as a satellite warehouse to assist its Tonawanda bottling facility in meeting distribution demands. The employees at the Tonawanda facility were members of the Market Produce, Warehouse, Frozen Food, Cannery Workers, Drivers, Helpers, Local Union 558, of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, AFL–CIO (the "Union"). By contrast, Coca–Cola staffed the Orchard Park warehouse only with nonunion

workers, including McKissock, Mingoia, and Haug.[1] Coca–Cola's management rejected the Union's attempts to extend the coverage of the collective bargaining agreement to Orchard Park employees.

In *Coca–Cola II,* we ruled, enforcing *Coca–Cola I,* that the Orchard Park warehouse was a "spinoff" of the Tonawanda facility, with the result that the Orchard Park employees were subject to the terms of the existing collective bargaining agreement between the Union and Coca–Cola at the Tonawanda facility. *See Coca–Cola II,* 936 F.2d at 127. Thus, provisions therein as to seniority rights with respect to layoffs and required contributions to the Union Fund were deemed applicable to employees at the Orchard Park facility.

In an unrelated decision rendered after we decided *Coca–Cola II* but before the Order was issued, however, the NLRB expressly overruled the "spinoff" theory underlying *Coca–Cola I, see Gitano Group, Inc.*, 308 NLRB at 1175–76 & nn. 18–23, 1992 WL 281657, stating the following new rule:

> [W]e announce today that when an employer transfers a portion of its employees at one location to a new location, we will no longer define the nature of the transfer in terms of the relationship between the "new" unit and the "old" unit (i.e., whether one is a "spinoff" or "partial relocation" from the other). Rather, we will begin with the Board's long-held rebuttable presumption that the unit at the new facility is a separate appropriate unit. Assuming that the presumption is not rebutted, we will then apply a simple fact-based majority test to determine whether the respondent is obligated to recognize and bargain with the union as the representative of the unit at the new facility.

*Id.* at 1175 (footnote omitted).

■ By the time *Gitano* was decided, compliance proceedings were already underway in this case in the aftermath of *Coca–Cola II* to determine the backpay and Union Fund

---

1. McKissock was a new hire. Mingoia had been a bargaining unit member at Tonawanda, and Haug had been employed as a nonunit employee at Tonawanda. *Coca–Cola I,* 299 NLRB at 990 n. 4, 1990 WL 155358. Employees such as

Mingoia were told that the Orchard Park facility would be nonunion and that they would have to withdraw from the Union in order to transfer there. *See id.* at 989 n. 1.

contributions owed with respect to McKissock, Mingoia, and Huag. *See* 29 C.F.R. § 102.54(a). Coca–Cola moved to set aside *Coca–Cola I* and dismiss the pending compliance specification,[2] invoking *Gitano.* The Board ruled, however, that: "The Board's order having been enforced by the Court, the Board lacks jurisdiction to set aside its order. *Royal Typewriter Co.,* ... 239 NLRB 1 [1978 WL 8213] (1978)." Coca–Cola then made a motion in this court, directed to the panel that decided *Coca–Cola II,* for recall of the mandate and vacatur of the order entered in *Coca–Cola I.* We denied that motion by order entered January 19, 1993.[3]

Administrative Law Judge Snyder then assessed the following backpay awards and Union Fund contributions in the compliance proceeding: (1) $16,257.27 in backpay and a $3,659.54 Union Fund contribution for McKissock; (2) $296.37 in backpay and a $3,696.59 Union Fund contribution for Mingoia; and (3) $136.98 in backpay and a $3,614.37 Union Fund contribution for Huag. The NLRB adopted Judge Snyder's findings in the Order, and now petitions this court for enforcement of the Order. *See* 29 U.S.C. § 160(e).

## Discussion

■ The issue presented for our determination is best analyzed in terms of the "law of the case" doctrine, which applies to "adhere[nce] to our own earlier decision on a given issue in the same litigation," *United States v. Adegbite,* 877 F.2d 174, 178 (2d Cir.), *cert. denied,* 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989), rather than res judicata, which pertains to the dispositive effect accorded to "[a] final judgment on the merits of an action." *Federated Dep't Stores v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981). Compliance determinations are made as a matter of course "[a]fter entry of a Board order direct-

ing remedial action, or the entry of a court judgment enforcing such [an] order," 29 C.F.R. § 102.52, and formal compliance proceedings ensue when necessary to resolve compliance issues. *Id.* § 102.54. Thus, compliance proceedings seem analogous to the damages phase of a civil proceeding, or the sentencing phase of a criminal proceeding, and are essentially a continuation of the initial proceeding.

■ The "law of the case" doctrine, unlike the rule of res judicata, *see Reed v. Allen,* 286 U.S. 191, 201, 52 S.Ct. 532, 534, 76 L.Ed. 1054 (1932) (collecting cases), authorizes departure from a prior ruling in the event of "an intervening change in the controlling law." *Adegbite,* 877 F.2d at 178 (collecting cases). As the NLRB correctly concluded, however, this course was not open to it in the aftermath of *Coca–Cola II,* because the NLRB has "no jurisdiction to modify a decree of this court." *NLRB v. Mastro Plastics Corp.,* 261 F.2d 147, 148 (2d Cir. 1958); *see also* 29 U.S.C. § 160(e) ("Upon the filing of the record with [a court of appeals] the jurisdiction of the court shall be exclusive and its judgment and decree shall be final...."); *International Union of Mine Workers, Locals Nos. 15, 17, 107, 108 & 111, (C.I.O.) v. Eagle–Picher Mining & Smelting Co.,* 325 U.S. 335, 343–44, 65 S.Ct. 1166, 1170, 89 L.Ed. 1649 (1945); *Jack E. Hartman,* 292 NLRB 1034, 1034 & n. 3, 1989 WL 223852 (1989); *Haddon House Food Prods., Inc.,* 260 NLRB 1060, 1060, 1982 WL 24331 (1982) (collecting cases); *Royal Typewriter Co.,* 239 NLRB at 1–2.

■ We, on the other hand, have authority to revise our prior rulings. *See United States v. Fernandez,* 506 F.2d 1200, 1203 (2d Cir.1974) ("An issue decided on a prior appeal is not foreclosed with all the finality of *res judicata* when the case comes back to

2. A compliance specification sets forth an NLRB regional director's determination of monetary, make-whole, reinstatement, or other remedies required by an NLRB order directing remedial action. *See* 29 C.F.R. §§ 102.52, 102.54(a).

3. As we recently held in *DeWeerth v. Baldinger,* 38 F.3d 1266, 1271 (2d Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 512, 130 L.Ed.2d 419 (1994),

"the recall denial [sought, as here, because of an intervening change in the governing law] cannot be presumed to serve as a substantive decision barring [the movant] from seeking further relief in the district court." Thus, our denial of Coca–Cola's recall motion does not prohibit us from considering Coca–Cola's present arguments against enforcement of the Order.

this court. Although the district court may not change our mind for us, we may ourselves do so."). Further, the denial of Coca-Cola's motion to recall the mandate in *Coca-Cola II* has no preclusive effect. *See supra* note 3.

■ Rather than decide in the first instance whether to apply *Gitano* or adhere to *Coca-Cola II* without modification, however, our proper course is to decline to enforce the NLRB's determination and remand for NLRB resolution of that issue in the first instance. As the Supreme Court has made clear:

> Appellate courts ordinarily apply the law in effect at the time of the appellate decision, *see Bradley v. School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). However, a court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act.

*NLRB v. Food Store Employees Union, Local 347,* 417 U.S. 1, 10 n. 10, 94 S.Ct. 2074, 2080 n. 10, 40 L.Ed.2d 612 (1974); *see also NLRB v. Long Island College Hosp.,* 20 F.3d 76, 82 (2d Cir.1994) ("the NLRB has considerable latitude to decide whether and when to apply its own decisional law retroactively") (collecting cases, including *Food Store Employees,* 417 U.S. at 10 n. 10, 94 S.Ct. at 2080 n. 10); *cf. Sure–Tan, Inc. v. NLRB,* 467 U.S. 883, 900 n. 10, 104 S.Ct. 2803, 2813 n. 10, 81 L.Ed.2d 732 (1984) ("The proper course for a reviewing court that believes a Board remedy to be inadequate is to remand the case to the Board for further consideration.") (citing *Food Store Employees,* 417 U.S. at 10, 94 S.Ct. at 2080).

This course seems especially appropriate here. In open cases where its discretion has not been foreclosed by a court of appeals enforcement ruling, the NLRB has applied *Gitano. See Armco Steel Co.,* 312 NLRB 257, 260, 1993 WL 373926 (1993); *Overnite Transp. Co.,* 311 NLRB 1242, 1242, 1993 WL 291412 (1993); *Mercy Health Servs. N.,* 311 NLRB 367, 367, 1993 WL 186156 (1993).

The NLRB should decide in the first instance, free of the compulsive force of *Coca-Cola II,* whether to do so in this proceeding. In view of the already protracted course of this case, we urge that the determination on remand be rendered expeditiously.

### Conclusion

We deny enforcement of the Order. The case is remanded to the Board for further proceedings not inconsistent with this opinion.